**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BERKLEY INSURANCE COMPANY, as subrogee and assignee of SCHNITZER STEEL INDUSTRIES, INC.<br><br>Plaintiff,<br><br>vs.<br><br>ALEX VEGA COLLAZO; EDUARDO LORENZI; JOSE PEREZ AND BEST PETROLEUM CORPORATION D/B/A GULF PUERTO RICO<br><br>Defendants. | Civil Action No. 23-cv-1254<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Berkley Insurance Company, as subrogee and assignee of Schnitzer Steel Industries, Inc., complains of Defendants, Alex Vega Collazo, Eduardo Lorenzi, Jose Perez and Best Petroleum Corporation d/b/a Gulf Puerto Rico, as follows:

## PARTIES AND JURISDICTION

1. Alex Vega Collazo ("Collazo") is a resident of Puerto Rico and at all times relevant to this complaint, worked at Schnitzer Steel Industries, Inc.'s ("Schnitzer") Ponce location.

2. Eduardo Lorenzi ("Lorenzi") is a resident of Puerto Rico and at all times relevant to this complaint, worked at Schnitzer's Ponce location.

3. Best Petroleum Corporation d/b/a Gulf Puerto Rico ("Gulf") is a Puerto Rico corporation with its principal place of business in Puerto Rico.

4. Jose Perez ("Perez") is a resident of Puerto Rico and at all times relevant to this complaint, worked at Gulf.

5. Berkley Insurance Company ("Berkley") is incorporated under the laws of the State of Delaware and maintains its principal place of business in Connecticut.

6. This Court has jurisdiction over this case pursuant to 28 USC § 1332(a) as Plaintiff and Defendants are citizens of different States within the meaning of the statute and the amount in controversy exceeds $75,000.

7. Venue is proper in this District pursuant to 28 USC § 1391(b) because the Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

8. Defendants Collazo and Lorenzi are former employees of Schnitzer. Collazo and Lorenzi were employed at Schnitzer's scrap metal recycling center in Ponce. Vega was the main scale operator at Schnitzer's Ponce facility and Lorenzi was the alternate scale operator.

9. During the course of their employment with Schnitzer, Collazo and Lorenzi conspired to defraud Schnitzer by causing checks to be issued by Schnitzer for scrap metal not actually provided to the company ("Fraudulent Checks"). Collazo and Lorenzi conspired with Perez, an employee of Gulf, to cash the Fraudulent Checks. Schnitzer did not learn of the Defendants' fraudulent scheme until June 30, 2022.

10. As a result of the Defendants' actions, Schnitzer was harmed in an amount in excess of $897,625. Berkley indemnified Schnitzer for its loss pursuant to the terms and conditions of a commercial crime policy (the "Policy") and now pursuant to that payment and a separate assignment from Schnitzer, seeks to recover Schnitzer's loss from Defendants.

## I. SCHNITZER'S PROCEDURES FOR ISSUING CHECKS TO ITS SUPPLIERS

11. Schnitzer operates five scrap metal recycling facilities in Puerto Rico, including one in Ponce. The Schnitzer Ponce facility buys scrap metal from commercial businesses and individual suppliers.

12. At each facility, scrap is weighed at a large truck scale to determine the amount of material purchased from the suppliers. The suppliers are paid for their scrap based on the weight of the material at a set price per unit of weight.

13. Schnitzer uses an automated system called SAI to capture weights, generate a record of the scrap purchase (called a ticket), and take digital pictures of the supplier's vehicle and the material it is carrying.

14. When suppliers drive into the facility, they are required to weigh their vehicle on a large truck scale. The scale is operated by a designated scale operator. The scale operator is stationed at a large window located next to the outside truck scale. The scale operator interacts with the suppliers that enter the facility to weigh the vehicles, determine the type of scrap being purchased, and issue payments.

15. After a supplier enters Schnitzer's facility, the scale operator identifies the supplier and enters their name into SAI to begin a scrap purchase. At this point, a gross weight (weight of the vehicle with the scrap metal) is automatically captured and recorded by SAI.

16. The scale operator determines the type and quality of scrap being purchased by visual inspection and enters it into SAI. The type and quality of material determines what price Schnitzer will pay the supplier for the scrap metal.

17. After the gross weight of their vehicle is captured in SAI, the supplier exits their vehicle and comes to the scale window to collect documentation that will be given to in-yard personnel. The supplier returns to their vehicle and drives off the truck scale and into the facility so the scrap can be unloaded.

18. Once the material is unloaded, the supplier drives the vehicle (now empty of the scrap metal) back across the scale to be weighed again. This time the tare weight (weight of the

empty vehicle) is recorded by SAI. The system calculates the net weight (the difference between gross and tare weights) and multiplies it by the unit price for the type of scrap as determined by the scale operator.

19. In the normal course of business, before leaving the facility, the supplier exits their vehicle and proceeds to the scale window to turn in paperwork and receive payment at the scale window. The scale operator prints a scrap ticket from SAI that includes the scrap material weight and amount due to the supplier. Payment is in the form of a check, which is printed at the scale operator's desk.

## II. DEFENDANTS COLLAZO AND LORENZI FRAUDULENTLY INDUCED SCHNITZER TO ISSUE THE FRAUDULENT CHECKS

20. Defendants Collazo and Lorenzi engaged in a fraudulent scheme by which they caused Schnitzer to issue checks for scrap material not actually provided by any supplier. Both Collazo and Lorenzi engaged in the fraudulent transactions outlined in this complaint, sometimes together and sometimes separately.

21. To perpetrate their fraud, Collazo and/or Lorenzi waited until a supplier entered the Schnitzer facility to sell scrap metal and drove onto the scale to start a valid purchase transaction in the supplier's name with a gross weight captured in SAI. However, unlike a legitimate transaction, the scale operator falsely informed the supplier that there was a problem with the weighing process and requested that the supplier back off the scale to reset it and then pull forward onto the scale once again. This reset of the scale and allowed Collazo and/or Lorenzi to start a second fraudulent transaction (individually "Fraudulent Transaction" and collectively, "Fraudulent Transactions") using a different supplier name. Upon information and belief, the Fraudulent Transaction was created using the name of a supplier that was not actually on site or a fictitious name.

22. After Collazo and/or Lorenzi took the second weight of the vehicle, the legitimate supplier drove their vehicle into the yard, unloaded their scrap, and returned to the scale. As with a legitimate transaction, the supplier then drove onto the scale to have a valid tare weight captured, completing their valid transaction and allowing them to be paid.

23. However, rather than completing the transaction, Collazo and/or Lorenzi requested that the supplier back off the scale and then pull forward again onto the scale. This reset the scale and allowed a second, fraudulent tare weight to be captured, thus completing a Fraudulent Transaction.

24. To collect payment, the valid supplier went to the scale operator's window and turned in their inspection ticket. SAI calculated the net weight (gross weight less tare weight) and generated a valid check in the amount of the purchase (net weight times the system material price). The valid supplier accepted the check and signed the receipt to indicate payment was received.

25. Following this legitimate transaction, Collazo and/or Lorenzi generated a check for a Fraudulent Transaction (the "Fraudulent Checks"). To support the Fraudulent Transaction and conceal their fraud, Collazo and/or Lorenzi either forged a signature on the inspection ticket or asked the acting yard inspector to sign the ticket at the end of their shift under the guise that he/she missed signing it while the supplier was in the facility.

## III. PEREZ, AN EMPLOYEE OF GULF, ENABLED THE FRAUD BY KNOWINGLY CASHING THE FRAUDULENT CHECKS

26. Collazo and Lorenzi presented the checks to Perez, an employee of Gulf, for payment.

27. Upon information and belief based on information provided during interviews conducted by Schnitzer and the circumstances surrounding the cashing of the Fraudulent Checks, Perez knew that the checks were fraudulently induced and were not for funds actually due to

Collazo and Lorenzi. With this knowledge, Perez, acting as an agent of Gulf and within the scope of his responsibilities as an employee of Gulf, cashed the Fraudulent Checks.

28. As a result of Perez's actions, as an employee and agent of Gulf, in accepting the Fraudulent Checks and issuing payment to Collazo and Lorenzi, Schnitzer was damaged in an amount in excess of $897,625.

## IV. BERKLEY'S SUBROGATION AND ASSIGNMENT RIGHTS

29. After discovering the Fraudulent Transactions and the Fraudulent Checks, Schnitzer submitted an insurance claim seeking indemnification under the Policy (the "Claim"). Berkley evaluated Schnitzer's Claim, determined the Claim was covered under the terms and conditions of the Policy, and after application of the deductible, issued payment to Schnitzer for in an amount in excess of $697,625.

30. Schnitzer also executed a separate assignment to Berkley, assigning to Berkley any and all of its rights, titles, interest, claims, causes of action, or rights of recovery which arise from or relate to its loss. Berkley now pursues recovery against Defendants for Schnitzer's loss as both a subrogee and assignee of Schnitzer.

## COUNT I: CONVERSION/VIOLATION OF 31 L.P.R.A. § 5141; 31 L.P.R.A. § 5142 (AS TO ALL DEFENDANTS)

31. Berkley incorporates paragraphs 1 through 30 as though fully set forth herein.

32. Defendants Collazo and Lorenzi engaged in the frequent and regular creation of Fraudulent Transactions, using the Fraudulent Transactions to generate the Fraudulent Checks.

33. With the assistance of Perez, who cashed the Fraudulent Checks, and acting through a mutual and common agreement to defraud Schnitzer, Collazo and Lorenzi obtained the proceeds of the Fraudulent Checks for their own benefit and to the deprivation of Schnitzer. At all times

relevant to this complaint, Perez was an agent of Gulf acting within his actual and apparent authority and within the scope of his employment with Gulf.

34. By cashing the Fraudulent Checks, Collazo, Lorenzi, Perez, and Gulf (through its employee and agent, Perez) illegally, maliciously, wrongfully exercised ownership and authority over Schnitzer's funds, thereby permanently depriving Schnitzer, the lawful owner, use of and employment of its own funds, in violation of 31 L.P.R.A § 5141.

35. As a result of Defendants' illegal, malicious and wrongful actions, Schnitzer was deprived of in excess of $897,625 of its own funds.

36. Berkley indemnified Schnitzer for its loss. Pursuant to that payment and a separate assignment from Schnitzer, Berkley may pursue recovery against Defendants for Schnitzer's loss.

WHEREFORE, Plaintiff Berkley Insurance Company, as subrogee and assignee of Schnitzer Steel Industries, Inc., requests that a judgment in excess of $897,625 be entered against Defendants Alex Vega Collazo, Eduardo Lorenzi, Jose Perez, and Best Petroleum Corporation d/b/a Gulf Puerto Rico; an award of all attorneys' fees and costs incurred in bringing this action; an award of pre-judgment and post-judgment interest; and for such other or further relief as this Court deems just and necessary.

**COUNT II: FRAUD**
**(AS TO COLLAZO AND LORENZI)**

37. Berkley incorporates paragraphs 1 through 36 as though fully set forth herein.

38. Defendants Collazo and Lorenzi made a series of materially false representations to Schnitzer in connection with the Fraudulent Transactions and Fraudulent Checks, including. but not limited to:

a. Capturing duplicate weights of vehicles to support Fraudulent Transactions, thereby falsely representing the weight of materials brought into Schnitzer's facility;

b. Entering false information into SAI to support the Fraudulent Transactions, including false information regarding the supplier and the type and quality of scrap material brought into Schnitzer's facility;

c. Generating false inspection tickets to support the Fraudulent Transactions;

d. Submitting false inspection tickets supporting the Fraudulent Transactions for payment, thereby causing the Fraudulent Checks to be issued;

e. Forging signatures on inspection tickets or asking the acting yard inspector to sign the ticket at the end of their shift, falsely representing that the inspector missed signing the ticket when the supplier was at the facility; and

f. Cashing the Fraudulent Checks, thereby falsely representing that the check was for a legitimate payment due to a legitimate supplier.

39. Defendants Collazo and Lorenzi made each of these representations knowing them to be false and intending to defraud Schnitzer.

40. Schnitzer reasonably and foreseeably relied upon Defendants Collazo and Lorenzi's false representations.

41. As a result of Defendants Collazo and Lorenzi's false representations, Schnitzer was damaged in excess of $897,625.

42. Berkley indemnified Schnitzer for its loss. Pursuant to that payment and a separate assignment from Schnitzer, Berkley may pursue recovery against Defendants for Schnitzer's loss.

WHEREFORE, Plaintiff Berkley Insurance Company, as subrogee and assignee of Schnitzer Steel Industries, Inc., requests that a judgment in excess of $897,625 be entered against Defendants Alex Vega Collazo and Eduardo Lorenzi, an award of all attorneys' fees and costs incurred in bringing this action, an award of pre-judgment and post-judgment interest, and for such other or further relief as this Court deems just and necessary.

**COUNT III: BREACH OF FIDUCIARY DUTY**
**(AS TO COLLAZO AND LORENZI)**

43. Berkley incorporates paragraphs 1 through 42 as though fully set forth herein.

44. As employees of Schnitzer entrusted to operate the scales used to determine the weight of metal purchased by Schnitzer, Collazo and Lorenzi occupied positions of trust and confidence, pursuant to which they owed a fiduciary duty to Schnitzer.

45. Defendants Collazo and Lorenzi breached their fiduciary duties to Schnitzer by generating the Fraudulent Transactions, causing Schnitzer to issue the Fraudulent Checks, and cashing the Fraudulent Checks, thereby depriving Schnitzer of its rightful use of its funds.

46. As a result of Defendants' breach of fiduciary duties, Schnitzer was damaged in an amount excess of $897,625.

47. Berkley indemnified Schnitzer for its loss. Pursuant to that payment and a separate assignment from Schnitzer, Berkley may pursue recovery against Defendants for Schnitzer's loss.

WHEREFORE, Plaintiff Berkley Insurance Company, as subrogee and assignee of Schnitzer Steel Industries, Inc., requests that a judgment in excess of $897,625 be entered against Defendants Alex Vega Collazo and Eduardo Lorenzi, an award of all attorneys' fees and costs incurred in bringing this action, an award of pre-judgment and post-judgment interest, and for such other or further relief as this Court deems just and necessary.

**COUNT IV: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; 31 L.P.R.A. § 5142 (AS TO PEREZ AND GULF)**

48. Berkley incorporates paragraphs 1 through 47 as though fully set forth herein.

49. As employees of Schnitzer entrusted to operate the scales used to determine the weight of metal purchased by Schnitzer, Collazo and Lorenzi occupied positions of trust and confidence, pursuant to which they owed a fiduciary duty to Schnitzer.

50. Defendants Collazo and Lorenzi breached their fiduciary duties to Schnitzer by generating the Fraudulent Transactions, causing Schnitzer to issue the Fraudulent Checks, and cashing the Fraudulent Checks, thereby depriving Schnitzer of its rightful use of its funds.

51. Upon information and belief based on the information provided during interviews conducted by Schnitzer and the circumstances surrounding the cashing of the Fraudulent Checks, Defendant Perez knew that Collazo and Lorenzi owed a fiduciary duty to Schnitzer and knew that they had obtained the Fraudulent Checks by breaching that fiduciary duty. With that knowledge, Perez aided and abetted Collazo and Lorenzi's breach of fiduciary duties by cashing the Fraudulent Checks. At all times relevant to this complaint, Perez was an agent of Gulf acting within his actual and apparent authority and within the scope of his employment with Gulf.

52. As a result of Defendant Collazo and Lorenzi's breach of fiduciary duties, Schnitzer was damaged in excess of $897,625.

53. Berkley indemnified Schnitzer for its loss. Pursuant to that payment and a separate assignment from Schnitzer, Berkley may pursue recovery against Defendants for Schnitzer's loss.

WHEREFORE, Plaintiff Berkley Insurance Company, as subrogee and assignee of Schnitzer Steel Industries, Inc., requests that a judgment in excess of $897,625 be entered against Defendants Jose Perez and Best Petroleum Corporation d/b/a Gulf Puerto Rico, an award of all

attorneys' fees and costs incurred in bringing this action, an award of pre-judgment and post-judgment interest, and for such other or further relief as this Court deems just and necessary.

**COUNT V: AIDING AND ABETTING FRAUD;**
**31 L.P.R.A. § 5142**
**(AS TO PEREZ AND GULF)**

54. Berkley incorporates paragraphs 1 through 53 as though fully set forth herein.

55. Defendants Collazo and Lorenzi made a series of materially false representations to Schnitzer in connection with the Fraudulent Transactions and Fraudulent Checks, including. but not limited to:

a. Capturing duplicate weights of vehicles to support Fraudulent Transactions, thereby falsely representing the weight of materials brought into Schnitzer's facility;

b. Entering false information into SAI to support the Fraudulent Transactions, including false information regarding the supplier and the type and quality of scrap material brought into Schnitzer's facility;

c. Generating false inspection tickets to support the Fraudulent Transactions;

d. Submitting false inspection tickets supporting the Fraudulent Transactions for payment, thereby causing the Fraudulent Checks to be issued;

e. Forging signatures on inspection tickets or asking the acting yard inspector to sign the ticket at the end of their shift, falsely representing that the inspector missed signing the ticket when the supplier was at the facility; and

f. Cashing the Fraudulent Checks, thereby falsely representing that the check was for a legitimate payment due to a legitimate supplier.

56. Defendants Collazo and Lorenzi made each of these representations knowing them to be false and intending to defraud Schnitzer.

57. Schnitzer reasonably and foreseeably relied upon Defendants Collazo and Lorenzi's false representations.

58. Perez provided active and substantial assistance to Defendants Collazo and Lorenzi in their fraud upon Schnitzer by cashing the Fraudulent Checks, which upon information and belief based on the information provided during interviews conducted by Schnitzer and the circumstances surrounding the cashing of the Fraudulent Checks, Perez knew were fraudulent and were not for any payment actually due to Collazo or Lorenzi. At all times relevant to this complaint, including while he was providing active and substantial assistance to the fraud, Perez was an agent of Gulf acting within his actual and apparent authority and within the scope of his employment with Gulf.

59. As a result of Defendants Collazo and Lorenzi's false representations and Perez's active and substantial assistance, Schnitzer was damaged in excess of $897,625.

60. Berkley indemnified Schnitzer for its loss. Pursuant to that payment and a separate assignment from Schnitzer, Berkley may pursue recovery against Defendants for Schnitzer's loss.

WHEREFORE, Plaintiff Berkley Insurance Company, as subrogee and assignee of Schnitzer Steel Industries, Inc., requests that a judgment in excess of $897,625 be entered against Defendants Jose Perez and Best Petroleum Corporation d/b/a Gulf Puerto Rico, an award of all attorneys' fees and costs incurred in bringing this action, an award of pre-judgment and post-judgment interest, and for such other or further relief as this Court deems just and necessary.

**COUNT VI: 19 L.P.R.A. § 655**
**(AS TO GULF)**

61. Berkley incorporates paragraphs 1 through 60 as though fully set forth herein.

62. Collazo and Lorenzi were scale operators at Schnitzer at all times relevant to this complaint. As scale operators, Collazo and Lorenzi were responsible for inputting the information

necessary to generate a check for scrap metal into Schnitzer's systems and for causing checks to scrap metal suppliers to be issued.

63. During their employment as scale operators, Collazo and Lorenzi caused the Fraudulent Checks to be issued for scrap metal payments not actually due.

64. Collazo and Lorenzi presented the Fraudulent Checks to Gulf for payment.

65. Gulf failed to exercise ordinary care in paying or taking the Fraudulent Checks Collazo and Lorenzi presented for payment, as Gulf, through its employee, Perez, knew that the checks were fraudulently induced from Schnitzer and/or did not represent amounts actually due and owing to the parties cashing those checks. Despite this knowledge, Gulf issued payment for the Fraudulent Checks. Gulf's failure to exercise ordinary care substantially contributed to Schnitzer's loss resulting from the fraud.

66. As a result of Gulf's failure to exercise ordinary care, Schnitzer was damaged in an amount in excess of $897,625.

67. Berkley indemnified Schnitzer for its loss. Pursuant to that payment and a separate assignment from Schnitzer, Berkley may pursue recovery against Defendants for Schnitzer's loss.

WHEREFORE, Plaintiff Berkley Insurance Company, as subrogee and assignee of Schnitzer Steel Industries, Inc., requests that a judgment in excess of $897,625 be entered against Defendant Best Petroleum Corporation d/b/a Gulf Puerto Rico, an award of all attorneys' fees and costs incurred in bringing this action, an award of pre-judgment and post-judgment interest, and for such other or further relief as this Court deems just and necessary.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Berkley Insurance Company respectfully prays for the following relief:

1. That a judgment in excess of $897,625 be entered against Defendants Alex Vega Collazo, Eduardo Lorenzi, Jose Perez and Best Petroleum Corporation d/b/a Gulf Puerto Rico and in favor of Plaintiff;

2. That Plaintiff be awarded any and all additional compensatory damages in an amount to be determined at trial;

3. That Plaintiff be awarded all costs and attorneys' fees incurred in bringing this action;

4. That the Plaintiff be awarded prejudgment and post judgment interest on all damages; and

5. That Plaintiff be awarded such further and general relief as this court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff Berkley Insurance Company hereby demands a trial by jury for all counts in this Complaint.

Date: May 18, 2023

Respectfully Submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: *<u>/s/ Jo-Ann Estades</u>*

______________________________________

Jo-Ann Estades (#211811)
16 Taft St., Apt. 2
San Juan, Puerto Rico 00911
jestades@grsm.com/joestades@yahoo.com
Tel: (787) 579-0019
Fax: (312) 565-6511
*Counsel for Plaintiff*